UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN AYRES, TIMOTHY LANG,
ARTHUR LITTLE, LARRY PUSKAR,
and JAY SPENCER,

        Plaintiffs,

vs.

Case No. 04-CV-71802

HON. GEORGE CARAM STEEH

RONALD BALOUSEK,

        Defendant

vs.

JAY SPENCER,

        Third-Party Defendant

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs are former long term employees of Producers Color Service, Inc. ("PCS"), a company that made television commercials for advertising agencies. Defendant Ronald Balousek was the owner and CEO of PCS. PCS ceased operations on November 24, 2003, and all plaintiffs in this matter were laid off or terminated by April 2004. They complain of PCS' failure to make certain severance, vacation/sick pay, and benefits payments they allege it was required to pay, and have made claims under ERISA, the Fair Labor Standards Act, and COBRA, as well as state law claims alleging fraudulent conveyance and violations of the Michigan Wage and Fringe Benefits Act.

Before the court are defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment. For the reasons that follow, defendant's motion will be granted in its entirety and plaintiffs' motion will be denied.

BACKGROUND

Plaintiffs' former employer, PCS, was a provider of advertising production services that ceased operations on November 23, 2003. Plaintiffs are five former long-term PCS employees: plaintiff Kevin Ayres, a Telecini Operator, Colorist, and Technical Artist, began work for PCS in 1975; plaintiff Timothy Lang, the Facility and Stage Manager, came on board in 1981; plaintiff Arthur Little, a Stage Manager, began in 1978; plaintiff Larry Puskar, a Senior Editor, started with PCS in 1980; and plaintiff Jay Spencer, Director of Technology, began work for PCS in 1980. Defendant Ronald Balousek was the owner, president, and sole director of PCS, and he made the decision to close the business. Plaintiff Ayres' employment with PCS ended October 24, 2003; Lang's, Puskar's, and Spencer's employment ended when they were laid off on November 24, 2003; and Little's employment with PCS came to an end on April 2, 2004.

Plaintiffs' first amended complaint, filed July 15, 2004, is comprised of five counts. The first is made under ERISA, alleging that defendant, as the fiduciary for the PCS plans, breached unspecified PCS severance, vacation, and sick day plans, which provided for eight weeks severance pay upon termination for employees hired before June 1, 1985, 20 days vacation pay for employees with over 20 years of service, and converted five sick days into vacation days for eligible employees, causing damages to all five plaintiffs. Count II, claiming violations of Mich. Comp. Laws Ann. §§ 408.473, 475, asserts that defendant, the "employer" of the plaintiffs, wrongly failed to pay all

2

owing wages and fringe benefits. The third count makes a claim under the Fair Labor Standards Act, and alleges that plaintiffs Ayres, Lang and Puskar were wrongly classified as exempt employees, and are entitled to recovery of improperly withheld overtime compensation of one and one-half times their regular pay. Count IV alleges that defendant, as an "employer" and the Plan Administrator/Sponsor or fiduciary of the PCS healthcare plan, improperly failed to provide plaintiffs with written notice of the right to continue their healthcare coverage upon their termination.[1] Finally, plaintiffs' fifth count is entitled "Fraudulent Conveyance," and asserts that "upon information and belief," defendant has been making mortgage payments on a residence in Birmingham, Michigan, which is titled only in defendant's spouse's name, and that such payments were made with "actual intent to hinder, delay or defraud creditors...without receiving equivalent consideration," at a time when defendant was insolvent.[2]

Defendant moves for summary judgment as to each of the claims summarized above. Plaintiffs also move for summary judgment as to counts II, III, and IV. The court's consideration of the parties' arguments and authorities, and its determination on the motions, is set forth below.

## STANDARD

---

[1] Plaintiffs further and more specifically allege that defendant, wrongly deducting from Ayres' October 2003 pay "the sum of $596.20 for his portion of cost of healthcare medical benefits, and appropriating that sum, thereby causing the lapse of that coverage." First Amended Complaint, ¶ 41.

[2] Defendant's third party claim against plaintiff Jay Spencer concerning Lang's FLSA overtime claim, concerning which Spencer filed a motion for summary judgment, was voluntarily dismissed by counsel at oral argument.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> also <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  <u>Anderson</u>, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

ANALYSIS

<u>Defendant's Motion for Summary Judgment</u>

<u>Count I (Entitled "ERISA-Severance, Vacation and Sick Day Benefits")</u>

Regarding Count I, defendant argues that the policies at issue, concerning severance, vacation, and sick pay, are not "plans" governed by ERISA, that plaintiffs have no remedy under that statute, and that the claims must be dismissed.  Defendant also asserts that during the plaintiffs' tenure with PCS, the PCS employee handbook was updated twice.  When plaintiffs began their employment with PCS, a 1979 version was in effect.  That handbook was updated in 1994, and again in 2003.  The 2003 version removed the severance pay provision which had been contained in the earlier versions.  Furthermore, each of the earlier handbooks had expressly reserved the right to make changes.  For example, the 1994 Handbook, Exhibit B to defendant's Brief in Support of His Motion for Summary Judgment, stated that "[c]hanging conditions may make it necessary to revise, change or delete some or all of these policies.  The

5

company reserves the right to make such revisions, changes and/or deletions." The 1979 and 2003 versions contained nearly identical language.

This claim must be dismissed. Not only had PCS changed the severance policy as of the distribution of the 2003 handbook, months before the earliest termination among the plaintiffs in October 2003, an action PCS had expressly reserved the right to take, there is ample authority for the proposition stated by defendants: the severance policy under discussion here would not be governed by ERISA even if it had not been changed[3]. As defendant argues, there is no evidence that the PCS severance program would have required "an ongoing administrative program to meet the employer's obligation." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11-12 (1987). Unlike the plans examined in Shahid v. Ford Motor Co., 76 F.3d 1404, 1401 (6th Cir. 1996) and Cassidy v. Akzo Noble Salt, Inc., 308 F.3d 613 (6th Cir. 2002), where severance plans were found to be ERISA plans, the PCS plan simply gave eligible employees eight weeks' salary at the time of termination. It does not impose the kind of administrative burden that would bring it under the governance of ERISA. Rather, the severance contemplated by the 1979 and 1994 Handbooks required only a "simple" determination, such as the severance plan found not to be an ERISA plan in Sherrod v. General Motors Corp., 33 F.3d 636, 638-39 (6th Cir. 1994), cited by defendant. Plaintiffs' Count

---

[3] Nor would plaintiffs' claims to unused vacation and sick pay, which defendant argued were "payroll practices," specifically exempted from ERISA under 29 CFR § 2510.3-1(b). See also Massachusetts v. Morash, 490 U.S. 107 (1989), cited by defendant. Plaintiffs did not contest this argument in their response brief, and in fact conceded it at oral argument.

I, alleging entitlement to severance and unused vacation and sick pay under ERISA, thus will not survive defendant's motion.

Count II (Entitled "Violation of MCL 408.473 and 408.475")

Count II also alleges entitlement to severance, vacation, and sick pay, under the Michigan Wages and Fringe Benefits Act, Mich. Comp. Laws Ann. §§ 408.473 and 475. Specifically, plaintiffs assert that "[d]efendant was obligated to immediately pay employees who have been discharged all wages owed and due...MCL 408.475," (First Amended Complaint, ¶ 18), and "[d]efendant was obligated to pay all fringe benefits due to employees in accordance with the terms set forth in a written policy...MCL 408.473" (Id., ¶ 20). Defendant asserts judgment should enter for him on this count because Mich. Comp. Laws Ann. § 408.481(1) states that "[a]n employee who believes that his or her employer has violated this act may file a written complaint with the department within 12 months of the alleged violation," which plaintiffs did not do, thus not exhausting required administrative remedies. [4]

If the plaintiffs could maintain this claim against an individual defendant, not their employer, the only disputed issue is whether seeking an administrative remedy as set forth in § 408.481, above, is permissive or mandatory. Defendant argues it is mandatory, and plaintiffs argue the word "may" clearly shows it is permissive. Defendant's authorities convince the court the section actually required plaintiffs to file a

---

[4] Defendant has made the general argument, applicable here, that plaintiffs cannot hold him liable as an individual, because their employer was PCS, citing Cummings v. Steel Build Homes, 313 Mich. 445 (1946). Although this is an alternative reason for dismissal of the claim, the court will address defendant's argument specifically addressing this count.

7

claim with the Michigan Department of Labor prior to filing a civil suit, which each plaintiff admits he did not do. Although plaintiffs argue because the "English [is] plain," the court should find plaintiffs were not required to exhaust administrative remedies, the case of Cork v. Applebee's of Michigan, Inc., 239 Mich.App. 311 (2000), relied on by defendant, clearly shows that plaintiffs' claims under the WFBA must be dismissed for failure to exhaust administrative remedies. As shown in that case, and properly discussed by defendant in his brief, where a plaintiff alleges a separate common-law claim, in *conjunction* with an WFBA claim, WFBA claims not filed with the Michigan Department of Labor must be dismissed, whereas common-law claims (such as breach of contract) would not be properly dismissed. Id. at 318. See also Gyro Design Group, LLC v. O'Grady, 2002 WL 31953818 *FN2 (unpublished), discussing Cork v. Applebee's holding. Plaintiffs have offered no authority which refutes this, nor has the court discovered such a case. Plaintiffs' WFBA claims are, therefore, dismissed.

Count III (Entitled "Fair Labor Standards Act")

      This count originally stated an FLSA claim as to plaintiffs Lang, Ayres, and Puskar. However, the briefing on the motion for summary judgment makes it clear that only plaintiff Lang now asserts this claim. In it, he alleges that his employer's method of making overtime payments to him violated of the Fair Labor Standards Act, which requires 1 ½ times an employee's regular rate for hours in excess of 40 per week. 29 U.S.C. § 207(a)(1).

      Defendant asserts two grounds for dismissal of this claim. First, defendant argues that plaintiff Lang was exempt from the FLSA's overtime requirement, and second argues that Lang's long-term acceptance of the method of calculating the

overtime was an implied agreement which bars the present claim. The court finds that the exemption from the FLSA's requirements applies to this case. Although plaintiff argues he was not a supervisory employee, or that if he was, he was a "working foreman" entitled to overtime for his work, it is clear that plaintiff's wages and responsibilities set him apart from those he supervised and exempted him from the overtime provisions of the FLSA.

As highlighted by defendant, plaintiff Lang's job description stated that he trained employees; wrote and conducted performance reviews, scheduled subordinates' work hours; coordinated vacation times; and represented goals and policies of management to subordinates. Lang agreed that was an accurate description. Lang deposition, p. 15. In fact, Lang agreed at deposition that he supervised two employees, delegated the tasks of his two subordinates on a daily basis, and could hire, fire, and discipline those subordinates. Id., pp. 14-16.

Defendant cites to the recent case from this district of Beauchamp v. Flex-N-Gate, LLC, 357 F.Supp.2d 1010 (E.D. Mich. 2005), where the plaintiff, earning a salary of "at least $37,000 as a production supervisor," was found to be exempt from the overtime requirements of the FLSA. That case set out the applicable regulations: for the exemption to apply, the employee 1) must be paid a salary of not less than $455 per week; 2) have the primary duty of management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) customarily and regularly direct the work of two or more other employees; and 4) have the authority to hire or fire other employees or whose suggestions and

9

recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

It is not disputed here that Lang's salary exceeded $455 per week, and he concedes he could hire or fire the employees he supervised. Furthermore, he agreed that the job description contained in a 1992 evaluation, attached as Exhibit G to his response brief, was "pretty complete right there." That evaluation was in his former title of "Plant Facility Supervisor," and contained the description, following SCOPE OF POSITION:

> The Plant Facility Supervisor ensures on a 24-hour basis the maintenance of a reliable operating environment for electronic equipment and the maintenance of an efficient and attractive physical plant and grounds through personal effort and supervision of departmental employees and outside contractors. Ensures compliance with building codes, safety standards and insurance regulations. Supervises special PCS construction projects, manages facility security program as security supervisor for the Defense Investigative Service.

The ensuing job description includes many duties under "1. Trains and supervises personnel, and 2. Coordinates departmental operations" which demonstrate the managerial nature of Lang's job with PCS. Furthermore, at deposition, Lang testified he could hire and fire the employees he supervised, issue discipline, and negotiate and sign contracts with outside contractors to maintain the facilities. Lang deposition, pp. 22-23. It is clear that Lang was in charge of managing the PCS facilities, and that he enjoyed considerable discretion in doing so. It is therefore the court's determination that, despite the employer's heavy burden of proof on a motion for summary judgment on the FLSA exemption issue as described in Martin v. Indiana Michigan Power Co., 381 F.3d 574, 578 (6th Cir. 2004), there is no material question of fact as to any of the

criteria in 29 C.F.R. § 541.100(a). Summary judgment is appropriate for defendant on this claim.

Count IV (Entitled "COBRA")

Here, defendant requests dismissal of Count IV of the First Amended Complaint, which alleges violations of COBRA continuation coverage requirements. Defendant argues the claim must be dismissed, because he was neither the Plan Administrator nor–even if he were-- was there any COBRA continuation or notice requirement once PCS stopped providing healthcare/dental coverage to any employees on October 1, 2003.

A close reading of Count IV shows that plaintiffs are complaining of defendant's failure to "provide plaintiffs with written notice of the right to continue healthcare coverage upon termination of their employment or, in the alternative, notify the plan administrator of the termination of their employment." First Amended Complaint, ¶ 36. Plaintiffs assert that defendant is liable "in an amount up to $100 per day from the 14th day after notice of plaintiffs' qualifying event," citing 29 U.S.C. § 1132(c)(1). Id., ¶ 38. Plaintiffs concede that "[e]ffective October 1, 2003, Blue Cross and Delta Dental cancelled the health and dental insurance coverage for plaintiffs because of nonpayment of premiums." Brief in support of Plaintiffs' Motion for Partial Summary Disposition, p. 16. Furthermore, plaintiffs' brief states that "D.R.S., the third-party administrator for the self-insurance portion of the Plan, stopped paying claims on September 24, 2003, when it exhausted the money PCS deposited with it." Id., p. 17.

The court agrees with the proposition advanced by defendant, citing Klosterman v. Western General Management, Inc., 805 F.Supp. 570 (N.D. Ill. 1992) and Local 217,

Hotel & Restaurant Employees Union v. MHM, Inc., 976 F.2d 805, 809-810 (2nd Cir. 1992), that once a group health care plan is terminated, there is no obligation under COBRA to provide continuation coverage or give notice thereof. The language of COBRA itself demonstrates this, which requires that coverage extend from the date of a "qualifying event," such as termination of employment, until "not earlier than the earliest of the following," including "[t]he date on which the employer ceases to provide any group health plan to any employee." 29 U.S.C. § 1162(2)(B). This is eminently logical, as there would be no further coverage to continue. Therefore, whether or not the defendant could be considered a Plan Administrator responsible for issuance of notices and found personally liable under COBRA, there was no obligation to provide continuation coverage or send notices thereof once the plans were terminated.[5] [6]

---

[5] In the brief in support of Plaintiffs' Motion for Partial Summary Judgment, it is asserted that "PCS continued to withhold from plaintiffs' paychecks the employee portion of the health and dental insurance premiums during the period of October and November 2003, including the last paychecks," pointing to the plaintiffs' individual depositions. The court notes that these allegations are not contained in plaintiffs' Count IV, nor do plaintiffs make an argument that *COBRA* was violated on this basis. As defendant asserts, these claims would properly be brought under the Michigan Wage and Fringe Benefit Act, discussed above, which requires exhaustion of administrative remedies.

[6] Plaintiff Ayres is the only plaintiff to make specific claims under Count IV, COBRA, where it is alleged that Ayres received a notice under COBRA of health and dental benefits continuation coverage. That October 31, 2003 notice received by Ayres is attached as Exhibit 14 to plaintiffs' brief, as is a copy of a check written by a Catherine Ayres, apparently in an attempt to continue dental coverage for one family member. Ayres asserts, in response to defendant's Motion for Summary Judgment, that he is entitled to a penalty of $110/ day under ERISA, 29 U.S.C. § 1132(c)(1), as a result of this misleading notice. However, the pertinent provision of that statute merely states that "[a]ny administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title...with respect to a participant or beneficiary.... may be personally liable" for the penalty. Those provisions merely relate to the administrator's responsibilities upon the occurrence of a "qualifying event," and do not address a continuation notice sent after termination of a plan. Absent any argument or authority in support of this claim under

Count V (Entitled "Fraudulent Conveyance")

This claim of fraudulent conveyance concerns mortgage payments made on a residence owned by defendant's spouse in Birmingham, Michigan.  Specifically, plaintiffs assert that "[t]hose mortgage payments were contrary to MCL 566.34 because:

A.     Made with actual intent to hinder, delay or defraud creditors;

B.     Made without receiving equivalent consideration;

C.     Defendant was insolvent when the mortgage payments were made... (sic)"

First Amended Complaint, ¶ 43.

Defendant's brief indicates agreement with the required elements for a claim of fraudulent conveyance, as listed by plaintiffs in their complaint, and asserts that plaintiffs have met none of the requirements.  Indeed, the court agrees that in response to defendant's motion, plaintiffs presented no substantive evidence that defendant was insolvent at the time he paid mortgage payments.  Plaintiffs point to "financial statements" collected from defendant through discovery, and imply that because his listed assets added up to less than his liabilities, defendant was "insolvent."  This simple assertion is simply insufficient to meet a required showing of insolvency.  However, even if it were sufficient to survive summary judgment on that element, plaintiffs have not offered any evidence to demonstrate that they were creditors of defendant Balousek at the time the alleged payments were made.  Finally, plaintiffs do not even address the question of whether defendant received equivalent consideration for the alleged mortgage payments.  Plaintiffs certainly have raised no genuine issue of material fact as

---

COBRA, plaintiff Ayres' claims concerning the October 31, 2003 notice likewise do not survive defendant's motion.

13

to defendant's potential liability under this claim, rendering summary judgment appropriate for defendant on this final count as well.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS defendant's motion for summary judgment, and DENIES plaintiffs' motion for partial summary judgment. Counts I, III, IV, and V of the complaint are hereby dismissed with prejudice. Count II is dismissed without prejudice.

IT IS SO ORDERED.


          S/George Caram Steeh
          GEORGE CARAM STEEH
          UNITED STATES DISTRICT JUDGE

Dated:  August 22, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on August 22, 2005, by electronic and/or ordinary mail.

          S/Josephine Chaffee
          Secretary/Deputy Clerk